## GALLAGHER v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. January 9, 1906.)

### No. 597.

1. COUNTERFEITING—UTTERING FALSE NATIONAL BANK NOTES—PROOF OF INTENT.

In a prosecution under Rev. St. § 5415 [U. S. Comp. St. 1901, p. 3662] for passing false or forged national bank notes, knowledge that they were falsely made is an essential element of the offense, and there must be some evidence of such knowledge, circumstantial or otherwise, aside from proof merely that the spurious note was passed.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Counterfeiting, §§ 7, 14, 45.]

2. CRIMINAL LAW—TRIAL—ADMISSION OF EVIDENCE.

Where the prosecution in a criminal case sought to prove a criminal connection between the defendant and a third person, who had in fact given testimony in a previous case directly contrary to the government's contention, it was misleading and prejudicial error to permit the prosecution to introduce in evidence the record of such person's prior conviction and sentence, for the expressed purpose of showing the reason why he was not called as a witness; the effect of such evidence being to induce the jury to believe, contrary to the fact, that but for such conviction he would have been called to prove the government's claim.

In Error to the Circuit Court of the United States for the District of Massachusetts.

Oscar Storer (Stebbins, Storer & Burbank, on the brief), for plaintiff in error.

William H. Lewis and Guy A. Ham, Asst. U. S. Attys. (Melvin O. Adams, U. S. Atty., on the brief).

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. This is an indictment founded upon section 5415 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 3662], which makes it an offense to counterfeit or imitate the circulating notes of banking associations. The indictment, as is usual where the offense charged is that of passing false or counterfeit notes, alleges that the note in question was passed knowing the same to be falsely made. Under the statute, knowledge is an essential

element of the offense, and must be proved. The point was taken that there was no evidence tending to show that the defendant knew the note in question was false when he passed it, and the defendant excepted to the instructions of the court that the passing was a circumstance by which the jury might infer knowledge that it was a counterfeit, if they thought that inference should be drawn.

Ordinarily, and as a general rule, there should be some evidence of knowledge, circumstantial or otherwise, aside from that which results from evidence of the naked fact that the spurious paper was passed. There can, of course, be no absolute or general rule as to what the evidence should be. It might, perhaps, result from a description of the appearance of the party when the money was passed, like evidence showing an attempt to disguise personal identity. There might, therefore, be something in the transaction itself sufficiently tending to show guilt to answer the requirements of the rule. The fact of knowledge may be proven in a variety of ways. There should, however, always be some evidence tending to show knowledge beyond that which results from mere proof that the spurious bill was passed. This rule results from the nature of the transaction, because, as is very well known, spurious notes are so skillfully fashioned that one might naturally and innocently, as is oftentimes the case, receive and pass them in the whirl of business. In such a case intent and guilty knowledge within the meaning of the statute would be absent. Hence the rule requiring something more than evidence of the mere passage of the counterfeit paper. Whether the circumstantial evidence was sufficient or not, in this respect, need not now be determined, as the case is disposed of favorably to the defendant upon other grounds. It would seem, however, that the instruction upon this branch of the case should have been more comprehensive in its requirements, and that the jury should have been told that there must be something in the relations of the parties, or in the field of circumstances, aside from the mere fact of passing the note, tending to show that Gallagher knew the note was spurious; and that the circumstantial evidence, together with the direct evidence as to passing it and the evidential circumstances, if any, attending the act, must be sufficient to satisfy the jury beyond a reasonable doubt that he knew the note was bad.

There was evidence on the part of the government introduced for the apparent purpose of showing guilty relations between Gallagher and one Dr. Thompson, who had previously been tried and convicted under the same statute. The evident purpose of the proof of such relations was to establish a situation which would warrant in inference by the jury that Gallagher was handling spurious paper furnished to him by Dr. Thompson, and an inference of the further fact that he knew it was bad. Subsequently, in the course of the trial, the government was permitted to introduce before the jury, subject to exception, the record of the conviction of Thompson.

As a general proposition in a criminal trial, it would clearly not be competent to introduce the record of a conviction of a third party for the purpose of establishing the substantive fact of that party's

guilt, because such independent fact would be wholly immaterial, and the circumstances of this case make it unnecessary to consider whether in a situation where the offense of a third party is connected with a charge for which a defendant is being tried, it would be open to the government to show the fact of the third party's guilt by record proof of the conviction. It is rendered unnecessary to consider such a question, because the government did not offer it upon the ground that it was connected. It was not claimed that the two offenses were so connected as to make it admissible upon that ground. The government's expressed purpose was to show why Thompson was not called as a witness, and it was said that as it was material to show that Gallagher received the spurious note in question from Thompson, and as Thompson was not called to show it, that the government was entitled to show why he was not called. It becomes necessary, therefore, to consider whether Thompson's conviction was the real reason for not calling him to prove the fact that he gave the spurious note to Gallagher. It is not necessary to consider as an element of the situation the provisions of the statutes with reference to bringing prisoners into court as witnesses, because this case may well be made to turn upon other grounds.

We are bound to take judicial notice of the fact that Thompson had previously testified, in his own behalf, in a case now before us and which we are now considering, that he did not purchase the outfit for the counterfeiting; that he did not buy the bond paper at Ward's; that he received no counterfeit bills from Wilson; and that he had given none to Gallagher or any other person. Thompson having testified to that in his own case, there could be no reasonable expectation that he would testify otherwise in Gallagher's Case. There was, therefore, no undue or erroneous inference to be removed. If the situation was such, before the introduction of the record, that the jury would naturally infer that Thompson would not do the government any good if he was called, or even if the necessary inference would be that if he was called by the government he would injure the prosecution by testifying against it, the inference would be only according to the fact; and it was not open to the government to remove such inference by making the jury believe, contrary to the fact, that the government would have called him to prove that he gave the spurious note to Gallagher, but for the reason that he was under conviction and sentence. Doing that, under the circumstances of this case, was misleading. So, without criticising, it must be assumed that the real reason for not calling Thompson was that he would not testify that he passed the money to Gallagher, and that the record was not introduced for the purpose of explaining why the government did not call him, but for the purpose of associating Gallagher, the man on trial, in criminal relations with Thompson, who had been convicted. This being so, the premises were fictitous and calculated, quite likely not through actual design but from their very nature, to mislead the presiding judge. Under the circumstances, the introduction of the record of the conviction of Thompson was highly prejudicial to the defendant, and unwarrantably so.

We are not unmindful of the rule sometimes held, which justifies an appellate court in sustaining the evidence if competent upon any ground, even if it be upon a theory different from that upon which it was offered. Such rule is not so general or so binding, however, as to require its application in this case for the purpose of enabling us to look for some possible ground for sustaining the admission of the record of Thompson's conviction.

The judgment of the Circuit Court is reversed, and the case is remanded to that court, with directions to set aside the verdict, and for further proceedings not inconsistent with this opinion.