## PRICE v. UNITED STATES.
### No. 3628.

Circuit Court of Appeals, Fourth Circuit.
April 20, 1934.

Adam Younce, of Greensboro, N. C. (Geo. A. Younce and Younce & Younce, all of Greensboro, N. C., on the brief), for appellant.

J. R. McCrary, U. S. Atty., of Greensboro, N. C. (Joseph T. Allen, Asst. U. S. Atty., of Greensboro, N. C., on the brief), for the United States.

Before PARKER and SOPER, Circuit Judges, and MEEKINS, District Judge.

PER CURIAM.

Appellant was convicted below of having passed, knowingly and with intent to defraud, certain counterfeit obligations of the United States, and of having had such obligations in his possession with intent to pass them, under section 151 of the Criminal Code (March 4, 1909, c. 321, § 151, 35 Stat. 1116 [18 USCA § 265]). In the District Court, the appellant's motion for directed verdict was denied, and this appeal raises the question whether there was substantial evidence either to trace the obligations in question into appellant's possession or to prove that

his possession, if established, was accompanied by guilty knowledge.

The evidence tended to show the following facts: On July 29, 1933, at about 10 p. m., appellant sent one Knight by automobile to purchase seventy-five gallons of whisky from a bootlegger named Martin, who lived in a neighboring county in Virginia, about sixty-five miles away. Appellant gave Knight a roll of bills, aggregating $67, and 50 cents in silver for the purpose. The whisky was purchased as contemplated; Knight using the money he had been given, which, according to witnesses to the transaction, consisted of six new $10 bills and seven $1 bills. The counterfeit bills introduced in evidence were six new bills purporting to be $10 Federal Reserve notes, issued by the Federal Reserve Bank of New York, and Martin testified that they resembled the bills he received from Knight. Martin folded the money received, put a rubber band around it, and kept it in his pocketbook, until he used it to purchase goods from his brother a few days later. The brother deposited the bills in a bank the next day, in an aggregate deposit of $817 in bills, and although the whole amount was sorted and placed in the till, an examination was at once made and it was found that six new $10 bills in the deposit were counterfeit. They were returned to Martin's brother, who thought they looked like the bills Martin had given him. He returned them to Martin who gave him $60 in good money for them, and turned them over to a secret service agent.

Shortly after the bills were discovered to be counterfeit, Martin made a trip to appellant's home in search of Knight, and informed appellant of the discovery. Appellant merely said he would tell Knight about it. The next Saturday Martin again went to appellant's home, this time with the secret service agent, Shepherd. Appellant told Shepherd on this occasion that he had not given Knight any $10 bills, but that the roll he had given him consisted of ones and a five. He did not then know Shepherd was an agent, but later found it out and approached Martin and stated that he would not have talked to Shepherd had he known such to be the fact. He was anxious to know whether Shepherd was going to arrest him and send him to the penitentiary. At about the same time appellant also told Knight he had given him no $10 bills. And he later told Knight he had found a man who knew where Martin had gotten the counterfeit bills, and asked Knight to contribute $25 towards the $150 which this man required as the price for divulging the information and giving testimony. Appellant offered no testimony at the trial.

We think that there was sufficient evidence on the essential points to justify the consideration of the case by the jury. While the evidence tracing the origin of the bills to the appellant was based largely upon the testimony of confessed bootleggers, it is not the province of this court to pass upon the credibility of witnesses. Such matters are for the jury, and we are obliged to accept as true the statements that Knight used the roll of bills appellant had given him, that there were six new $10 bills in the roll, which later found their way to the bank and back again, and that the six counterfeit bills in evidence below resembled the bills that Knight gave Martin for the purchase of liquor for the appellant. We think that this testimony was sufficient to bring home to appellant the original possession and passing of the bills.

Since those elements of the crime were established, there can be no doubt that appellant's conduct after the discovery that the bills were counterfeit warranted the jury in finding that he knew they were counterfeit when he possessed and passed them. The naked act of possessing and passing counterfeit money does not necessarily give rise to a legitimate inference of guilty knowledge (compare Gallagher v. U. S. [C. C. A.] 144 F. 87, 88), but the additional circumstances of his fear of arrest, his denial that he had given Knight any $10 bills, and his efforts to obtain testimony to the effect that the bills came into Martin's hands from another source, were so inconsistent with innocence as plainly to entitle the jury to infer that appellant knew the bills were counterfeit when he held and passed them.

There was no prejudicial error in the rulings of the trial court in regard to the admission of evidence, and the judgment must be affirmed.