UNITED STATES of America,
Plaintiff-Appellee,

v.

Raymond J. BERKLEY and Anthony
Verzi, Defendants-Appellants.

No. 14256.

United States Court of Appeals
Sixth Circuit.

April 14, 1961.

Boyd, District Judge, dissented.

George W. Morrison, Asst. U. S. Atty.,
Cleveland, Ohio, for appellee, Russell E.
Ake, U. S. Atty., Cleveland, Ohio, on the
brief.

Stanley M. Fisher, and Marvin A. Ko-
blentz, Cleveland, Ohio, for appellant.

Before SIMONS, Senior Circuit Judge,
O'SULLIVAN, Circuit Judge, and
BOYD, District Judge.

O'SULLIVAN, Circuit Judge.

Defendants-appellants Raymond J.
Berkley and Anthony Verzi, were con-
victed by a jury of passing two counter-
feit $100.00 bills (Federal Reserve notes)
(Title 18 U.S.C. § 472). Berkley was
sentenced to four years imprisonment
and Verzi to eighteen months. Defend-
ants here claim that they should have
been acquitted by direction of the trial
judge, and, alternatively, that a new trial
should be ordered because of the admis-
sion of certain evidence offered by the
government.

The government's evidence may be
summarized as follows: On September
25, 1959, defendants were in the city of
Ashtabula, Ohio. They entered a cloth-
ing store and Berkley there purchased a

suit of clothes, paying for it with a $100.00 counterfeit bill. Berkley received the change required by the price of the suit and defendants left with the suit. Berkley advised that he would prefer to have necessary alterations made by his own tailor. Shortly thereafter defendants entered a second clothing store where defendant Verzi selected a suit which was paid for by defendant Berkley with another $100.00 counterfeit bill. After leaving this latter store, Verzi returned and purchased a lapel handkerchief. One of the store proprietors testified that Berkley identified himself as a night club proprietor from Erie, Pennsylvania. This was not true.

Shortly after the above purchases were made, it was discovered that the $100.00 bills so passed by Berkley were counterfeit. This information and a description of the defendants was radioed to police cars. Defendants, then driving back to Cleveland, were observed by a highway patrolman who stopped them. After searching defendants for weapons, getting their names and examining Berkley's driver's license and car registration certificate, the officer directed them to proceed to the Ohio State Highway Patrol Station. Defendants and the officer then proceeded toward Ashtabula. En route, an Ashtabula police captain intercepted them and the three cars then proceeded to the police post, the highway patrol car in front and the police captain's car behind the one occupied by defendants. While the cars were thus proceeding, police officers in the rear car kept the defendants' car under observation to see if anything would be thrown out of either side. They saw nothing thrown out. However, as defendants' vehicle turned to the right into the Patrol Post driveway, it appeared to be momentarily out of control, during which interval, "a fraction of a second," the officer's vision of the driver's side of the Berkley car was blocked. At the police post, the suits purchased were found in the Berkley car. Berkley admitted buying the suits with the $100.00 bills which he then claimed he had won in a poker game.

Both defendants denied knowledge that the bills were counterfeit.

Defendants were indicted on October 22, 1959. On the trial, which commenced on March 2, 1960, the government produced one Bruno Pucci, maintenance man at the mentioned Highway Patrol Post. Over objection, this witness testified that on October 1, 1959, while spreading crushed stone on the driveway at the Patrol Post, he found in a hole which he was filling a packet of five counterfeit $100.00 bills. Four of these bore a serial number one digit higher than one of the two bills which had been passed by the defendant Berkley five days previously. The fifth bore the identical serial number as one of the bills so passed by Berkley. A government secret service agent testified that no genuine bills ever bear the same serial numbers. Such agent further testified that all of the counterfeit bills introduced in evidence were part of a production of about one million dollars' worth, $750,000.00 worth of which were seized before they had been put in circulation. The balance had been put in circulation all over the country. About forty of such $100.00 counterfeit bills had been seized in the Cleveland, Ohio, area in the fourteen months preceding the trial, including some that were seized subsequent to defendants' apprehension on September 26, 1959. The same government witness testified that on January 12, 1960, he talked with defendant Berkley concerning the five counterfeit bills found in the Patrol Post driveway, stating to Berkley, "That was a pretty cute trick you pulled ditching those notes from the car as you pulled in the Highway Patrol Post." Asked what Berkley's reply was, the witness said, "He smiled and said there were nine of those notes." On cross examination, the witness said that he did not think Berkley's answer was meant to be facetious. The store proprietors who received the bills testified that when received, they believed them to be genuine. The secret service agent testified that non-experts might accept the bills as bona fide—that they were considered a good counterfeit job.

Defendant Berkley had a prior criminal record of two felonies and some juvenile offenses. Defendant Verzi had no criminal record. Berkley, testifying in his own behalf, gave the following account of his possession and passing of the counterfeit bills: He had acquired the bills as part of his winnings in the daily double at a race track on the day previous to passing them; that on the day in question he drove to Ashtabula to look up an old friend. Verzi went along at Berkley's invitation. They discovered that Berkley's old friend had moved away some eight or nine months previously. They then parked Berkley's car and on their way to lunch Berkley saw a suit of clothes in a store window that struck his fancy. At lunch he told Verzi of his previous day's winnings at the race track, the sum of $542.50. At this news, Verzi reminded Berkley that the latter owed Verzi $100.00 on a bet previously made between them on the outcome of the American League pennant race. Thus reminded, Berkley said he would pay the bet, or if Verzi wished, Berkley would buy Verzi a suit of clothes, Berkley having decided to buy himself a suit. After lunch, both men went to the clothing store whose suit display had attracted Berkley. He there chose a suit, tendering a $100.00 bill he had won in payment. He was given the necessary change, advising the merchant that he would have the needed alterations, including "cuffing," done by his own tailor. This transaction was at the Puritan Store. Both defendants then proceeded to the Globe Clothiers where Verzi chose a suit which Berkley paid for with another of the $100.00 bills in question. Berkley testified that he gave the change from this bill to Verzi to complete payment of his wagering debt of $100.00. Verzi testified that Berkley kept the change. Both defendants said that Verzi returned to the Globe Clothiers and purchased a handkerchief. The government's evidence had indicated that this purchase had been made as Verzi was leaving the store after the purchase of his suit.

Berkley's account of the January, 1960, conversation with the government secret service agent concerning the bills found in the driveway rebutted any implication connecting him with such bills. He said that his reply to the agent's prodding that defendant was "pretty slick" in throwing them out of the car and that they had found five of them in the driveway was, " * * * there could have been nine or ninety. I don't know anything about any bills you might have found out there."

Defendant Verzi testified that while in Ashtabula he had no idea of the denominations of the bills that made up Berkley's track winnings, or whether Berkley actually had them with him. He testified that he never saw the bills used by Berkley in paying for the suits and as to the purchase made in the first store, he did not know that Berkley had used a $100.00 bill. Verzi testified that he saw nothing dropped or thrown from the car in which he and Berkley were driving on their way to the Patrol Post.

Verzi verified winning the $100.00 wager from Berkley on the baseball pennant race and was corroborated in this by a relative who testified for defendants. It was inferable from the testimony that the bet was really not expected to be paid and only Berkley's good fortune in the daily double prompted these sportsmen to recognize the obligation of such a substantial wager.

Except for what inferences might be drawn from the events outlined above, there was no evidence of any kind that Verzi had anything to do with the counterfeit bills or had any knowledge they were counterfeit.

We shall discuss the grounds relied on for reversal as follows:

■■ 1) *Admissibility and materiality of the evidence of the counterfeit bills found in the police driveway.* It was the burden of the prosecution to prove, not only the passing of the counterfeit bills, but also to supply evidence from which the jury could find, beyond a reasonable

doubt, that defendant Berkley "with intent to defraud" passed each counterfeit note and "knew that said note was counterfeit" as charged in the indictment. Zottarelli v. United States, 6 Cir., 1927, 20 F.2d 795, 798, certiorari denied 275 U.S. 571, 48 S.Ct. 159, 72 L.Ed. 432; Marson v. United States, 6 Cir., 1953, 203 F.2d 904; Price v. United States, 4 Cir., 1934, 70 F.2d 467. Evidence which would directly, or by legitimate inference, prove such knowledge and intent was admissible and material. Evidence of remote or disconnected circumstances without probative value beyond mere suspicion, or the reception of which would violate traditional rules of evidence may not be used to supply proof of knowledge and intent. We, however, do not consider that the evidence of the finding of the five counterfeit bills in the police driveway was so remote or disconnected from other established events as to destroy its admissibility or probative value. Supporting its relevancy and materiality were these circumstances. The five bills were found at a place where defendant Berkley had driven his car five days before their discovery; Berkley's abrupt turn of his car at that point which took his side of the car out of the view of the officers; the serial numbers on the bills so found were within two digits of, or identical with, the passed counterfeit bills; and Berkley's assertion that there were nine bills instead of five, when asked about that number being found. If the jury accepted the secret service agent's account of Berkley's statement, such account indicated some knowledge by Berkley of the bills so found. It was for the jury to resolve any factual issue involved.

Neither the briefs of counsel nor our own research provides us with any precedent containing facts which would make any decided case a controlling authority on the question before us. The fact that the discovery of the bills in the driveway did not occur until five days after Berkley's opportunity to drop them there does not, under all of the circumstances, render their discovery too remote. We need not decide whether the passage of a longer period of time would render them inadmissible. Neither do we have to here decide whether the discovery of the five bills would have been admissible evidence, absent the statement by defendant Berkley to the government agent which disclosed his knowledge of them. Their admissibility is clearly aided by Berkley's admission.

The finding of counterfeit bills at places where an accused had recently passed other counterfeit bills has been received in support of needed proof of guilty knowledge. York v. United States, 9 Cir., 1916, 241 F. 656; Carrullo v. United States, 8 Cir., 1950, 184 F.2d 743, 746. In these cases, less time elapsed between the passing of the counterfeit bills and the finding of others than in the case before us. Accordingly, they do not provide precise precedent, but are generally supportive of our conclusion. Appellant Berkley asserts that to have allowed the jury in the case at bar to consider the evidence under discussion was a violation of a rule of evidence which, it is claimed, forbids the basing of an inference upon an inference. Aside from whether there is today any such precise rule of evidence [Wigmore on Evidence, 3rd Ed., § 41; Toliver v. United States, 9 Cir., 1955, 224 F.2d 742, 745; Annotation 95 A.L.R. 162], we are satisfied that here there was evidence of facts concerning the five counterfeit notes from which an inference of Berkley's connection with them could be legitimately drawn.

We find no error in the admission of this questioned evidence.

■ 2) *Should a verdict of acquittal of defendant Berkley have been directed?* On such question, the trial judge, as well as this court, must view the evidence and the inferences that may justifiably be drawn therefrom, in the light most favorable to the government. Battjes v. United States, 6 Cir., 1949, 172 F.2d 1, 5. It was for the jury to determine the credibility of witnesses, including defendants, and to weigh the evidence. Applying the test which we must employ, we are satisfied that there was

sufficient evidence to permit the jury to pass upon the guilt of the defendant Berkley.

3) *Should a verdict of acquittal of defendant Verzi have been directed?* Each count of the indictment charged that the defendant Verzi, "with intent to defraud" passed a counterfeit obligation of the United States, and that he "then and there knew that said note was counterfeit" in violation of Title 18, § 472, U.S. C. We may assume that if Verzi was aware that the bills passed by Berkley were counterfeit, he was a participant in the criminal enterprise involved.

■ However, it was the duty of the government to produce evidence from which the jury by finding certain facts to be true, or by drawing legitimate inferences from proven facts, could find, beyond a reasonable doubt, that defendant Verzi knew that the bills passed by Berkley were counterfeit. Zottarelli v. United States, 6 Cir., 1927, 20 F.2d 795; Marson v. United States, 6 Cir., 1953, 203 F.2d 904, 906; Price v. United States, 4 Cir., 1934, 70 F.2d 467; United States v. Carll, 1882, 105 U.S. 611, 26 L.Ed. 1135. Suspicion that Verzi had guilty knowledge will not suffice. Without again reciting our review of the government's case against Verzi, we are unable to find *any evidence of sufficient probative value* to satisfy the government's burden of proof. Verzi should have been acquitted by direction.

The judgment of conviction of defendant Raymond J. Berkley is affirmed; the judgment of conviction of defendant Anthony Verzi is reversed and he shall stand acquitted of the offense charged.

BOYD, District Judge (dissenting).

With due deference to my colleagues, I would not only affirm the judgment of conviction entered by the District Court as to the defendant Berkley but also as to the defendant Verzi.

In my opinion, substantially competent evidence to support the conviction of both defendants is present.