**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Lawrence RELEFORD, Defendant-Appellant.**

**No. 16078.**

United States Court of Appeals
Sixth Circuit.

Nov. 2, 1965.

Certiorari Denied Jan. 17, 1966.

See 86 S.Ct. 562.

---

6. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), supra.

7. See Kunz v. Lowden, 124 F.2d 911 (10th Cir. 1942).

John F. Dugger, Morristown, Tenn. (H. M. Bacon, Morristown, Tenn., on the brief, Bacon & Dugger, Morristown, Tenn., of counsel), for appellant.

Ottis B. Meredith, Knoxville, Tenn. (J. H. Reddy, U. S. Atty., David E. Smith, Asst. U. S. Atty., Knoxville, Tenn., on the brief), for appellee.

Before MILLER and O'SULLIVAN, Circuit Judges, and MATHES, Senior District Judge.*

O'SULLIVAN, Circuit Judge.

This is an appeal from a judgment entered upon a jury verdict finding defendant-appellant, James Lawrence Releford, guilty of passing three counterfeit $50.00 bills. (Atlanta Federal Reserve Notes) Appellant was indicted with his brother, Ralph Randy Releford and his cousin, Marion Eugene McClure. Count one of the indictment charged these three persons with conspiracy to violate Section 472 Title 18 U.S.C.A.[1] Counts two, three and four charged substantive offenses under the same statute, specifically that appellant on July 2, 1962, had passed counterfeit $50.00 bills, one at the Latimer Looney Chevrolet Company in Kingsport, Tennessee, one at Joe's Food

---

* Sitting by designation with 6th Circuit.

1. "Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both." 18 U.S.C.A. § 472.

Market in Rogersville, Tennessee and one at Stapleton's Super Market in Rogersville, Tennessee respectively. The remaining counts five through eighteen, charged that appellant's codefendants had, also on July 2, 1962, passed fourteen counterfeit $50.00 bills at various places, six in Rogersville and eight in Greenville, Tennessee. Appellant's codefendants entered pleas of guilty to the offenses charged. The entry of such pleas was not before the jury in the trial of appellant but, by stipulation, the government and appellant's counsel did advise the jury that said codefendants had passed the counterfeit bills at the times and places set forth in the indictment. This stipulation includes the statement that appellant "does not admit that he knew at the time that Marion Eugene McClure and Ralph Randy Releford possessed or passed the said fifty dollar counterfeit notes." Defendant did not testify and rested his case at the conclusion of the government's proofs.

The jury disagreed as to the conspiracy count but found appellant guilty of the substantive offenses charged in counts two, three and four. Concurrent sentences of eight years imprisonment were imposed under counts two and three and five years probation ordered under count four.

This appeal charges that there was not sufficient evidence to support the jury's finding of guilt and that the District Judge erred in the instructions given and in failing to give an instruction requested by defendant-appellant.

### 1. Sufficiency of evidence

■ It is familiar law that in testing the propriety of setting aside a jury's verdict of guilty on grounds of insufficient evidence we appraise the government's evidence and the legitimate inferences therefrom in the light most favorable to the prosecution. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Decker, 304 F.2d 702, 705 (C.A.6, 1962). There was abundant evidence to support the jury's verdict.

July 2, 1962 was a day of much commerce in fifty-dollar counterfeit bills in the cities of Kingsport, Rogersville and Greenville, Tennessee. Some seventeen successful transactions were accomplished on that day in the area described. Each of the notes bore the same serial number—a circumstance peculiar to counterfeit bills. Defendant was positively identified as the person that cashed such notes at Latimer Looney Chevrolet Company, in Kingsport and at Joe's Food Market, in Rogersville. The identification of defendant as the man who passed one of the notes at Stapleton's Super Market, in Rogersville was less positive. Mary Stapleton, wife of the proprietor of Stapleton's, expressed her guarded belief that defendant, sitting in the court room, was the man who had given her a counterfeit fifty-dollar note to pay for a purchase of less than one dollar. She gave him the required change. Officers had shown her a picture of defendant and she agreed with them that he was the man she had dealt with. On cross-examination she agreed that she would not "say for sure that's him." On redirect she said "It looks like him * * * it certainly looks like him."

Although apellant did not testify, there was evidence that in an interview with Federal officers he had admitted passing three fifty-dollar notes one at Latimer Looney, one at Joe's Food Market and one at a place he was unable to recall. He stated that he had obtained the three notes from one Cecil Price at Danville, Virginia as part of a total payment of $200.00 for four cases of whiskey. Investigation at Danville, Virginia failed to locate such a person as Cecil Price described by appellant as a bootlegger. The record does not disclose whether the involved whiskey was moonshine or some special brand commanding such a substantial price. When the officers arrived at defendant's home to interview him he greeted them by saying that he had been expecting them. Defendant's mother, called by the government, testified that in the afternoon of July 2, she came home

to find defendant sitting on her porch, and that while he was visiting with her, his codefendants arrived and shortly thereafter the three of them left in what could be inferred to be defendant's 1960 air conditioned Cadillac. In his interview with the government agents defendant said he did not know that the notes were counterfeit.

 Appellant's charge of insufficient evidence rests primarily upon the wavering identification by Mrs. Stapleton and the lack of direct proof that defendant knew that the bills were counterfeit. We believe that the guarded identification of Mrs. Stapleton together with the balance of the government's proofs made a case for the jury in this regard. Butler v. United States, 317 F. 2d 249 (C.A.8, 1963); Walker v. United States, 254 F.2d 509 (C.A.6, 1958). We likewise are of the opinion that the evidence was sufficient to support a finding of defendant's knowledge that he was dealing in counterfeit money. While proof of the passing of such notes does not by itself give rise to an inference of guilty knowledge Price v. United States, 70 F.2d 467, 468 (C.A.4, 1934); United States v. Litberg, 175 F.2d 20 (C.A.7, 1949), and guilty knowledge is an essential element of the charged crime, United States v. Carll, 105 U.S. 611, 26 L.Ed. 1135, 1136 (1882); Zottarelli v. U. S., 20 F.2d 795, 798 (C.A.6, 1927) cert. den. 275 U.S. 571, 48 S.Ct. 159, 72 L. Ed. 432 and must be proved beyond a reasonable doubt, Gallagher v. United States, 144 F. 87 (C.A.1, 1906); United States v. Ruffino, 67 F.2d 440, 441 (C.A. 2, 1933), we believe that the cumulative effect of the proven acts and the surrounding circumstances was sufficient to permit the jury to find beyond a reasonable doubt the required knowledge. Such view is supported by this court's opinion in Marson v. United States, 203 F.2d 904, 906, 907, (C.A.6, 1953). Of particular cogency on this point is the evidence that defendant disposed of the three fifty-dollar notes with striking dispatch, employing them seriatim to pay for three separate purchases apparently totaling less than $25.00.

2. Refusal of requested instruction

██ The District Judge refused to give the following instruction requested by appellant:

"I further charge you that you cannot infer that the defendant knew that the bills were counterfeit, solely from the fact that he passed them, if you find that he did pass them."

We find no fault with the request as an abstract and relevant statement of applicable law. Marson v. United States, 203 F.2d 904, 906 (C.A.6, 1953); United States v. Berkley, 288 F.2d 713, 717 (C.A.6, 1961), cert. den. 368 U.S. 822, 82 S.Ct. 41, 7 L.Ed.2d 27. But we must test the refusal in the light of what the court did charge on the question of guilty knowledge. The District Judge told the jury:

"Knowledge of or belief by the defendant Mr. Releford of the counterfeit character of any notes he may have passed is an essential element in this crime, and it must have been proved that Mr. Releford had such knowledge, or held such belief, along with proof of all other essentials of these crimes, convincing you of the defendant's guilt beyond a reasonable doubt, before you can convict Mr. Releford.

"Note further that intent to defraud is also one of the essential elements of the offenses charged under this section of the Code. However, the evidence need not show that the United States or anyone was actually defrauded, but only that the accused acted with the intent to defraud. To act with intent to defraud means to act with specific intent to deceive or cheat, for the purpose of either causing some financial loss to another, or bringing about some financial gain to oneself."

And he further included as an essential of the government's proof

"that the person passing such counterfeit or spurious note knew that it was not genuine"

and that

"the burden is on the prosecution to have proved beyond all reasonable doubt each and every essential element of the crime charged in each count of the indictment."

The foregoing was charged after the trial judge had earlier said:

"as regards serious crimes, as are charged in this case, specific intent must be proved before there can be a conviction. As the term itself suggests, specific intent requires more than a mere general intent to do something. A person who knowingly does an act which the law forbids, intending with evil motive or bad purpose either to disobey or to disregard the law, may be found by you to have acted with specific intent. An act is done knowingly if it is done voluntarily and purposely, and not because of some mistake or inadvertence or other innocent reason."

We believe that from such instructions the jury would clearly understand that proof of the passing of the counterfeit bills would not by itself permit a finding of the requisite guilty knowledge. We should not be overquick to brush aside as harmless error the failure to give a correct statement of relevant law but in the light of what the court did charge in this case we are constrained to hold that no "substantial rights" of defendant were affected by refusal of the requested instruction. Fed.R.Crim.P. 52(a).

### 3. Instruction on intent

■ The court charged the jury as follows:

"It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts which he knowingly does or knowingly omits to do. So, unless the contrary appears to you from the evidence, you may draw the infer-

ence that Mr. Releford intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act which he knowingly did or knowingly omitted."

Relying on the Fifth Circuit's decision in Mann v. United States, 319 F.2d 404, 407 (1963) that such an instruction was erroneous, appellant here charges error in the giving of it. We have had occasion to characterize the language of the involved instruction as clumsy and inartistic but in United States v. Denton, 336 F.2d 785, 788 (C.A.6, 1964) where the proof of guilt was strong as it is here, we held that the use of it was not reversible error. Speaking for this court Judge Edwards there said:

"This instruction has been recently and vigorously criticized by the Fifth Circuit, Mann v. United States, 319 F.2d 404 (C.A.5, 1963), cert. denied 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964). It has also been held more recently by the Ninth Circuit not to constitute prejudicial error under the whole instruction on intent therein given. Sherwin v. United States, 320 F.2d 137 (C.A.9, 1963), cert. denied 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420, rehearing denied 376 U.S. 946, 84 S.Ct. 796, 11 L.Ed.2d 771 (1964). We feel that the second sentence of the instruction quoted above is at best clumsy and, if taken alone, confusing. On this record, however, and under a total instruction on intent very similar to that in the Sherwin case, we do not think the error affected any 'substantial right' of defendant." 336 F.2d 788.

We consider that such observations are appropriate and controlling here.

### 4. Instruction on reasonable doubt

■ Included in the court's charge was the following:

"But proof beyond a reasonable doubt is established if the evidence is such as you would be willing to

rely and act on in the most important of your own affairs, * *."

The quoted language is plucked from its context before being accused. It must be returned to that context to test whether it wronged the defendant. Cobb v. Union Railway Company, 318 F.2d 33, 37 (C.A.6, 1963). It is but part of a sentence that concludes "but no defendant is ever to be convicted on mere suspicion or speculation or conjecture." In addition to the balance of its own sentence the accused language is part of a charge which contains long approved definitions of reasonable doubt. We are aware that the District of Columbia circuit has recently condemned language substantially like that challenged here. Scurry v. United States, 347 F.2d 468 (C.A.D.C.1965) and its earlier opinion of Jones v. United States, 119 U.S.App. D.C. 213, 338 F.2d 553, 555 (1964). But see Hopt v. People of Utah, 120 U.S. 430, 439–441, 7 S.Ct. 614, 30 L.Ed. 708, 711 (1887); Hooper v. United States, 216 F.2d 684, 689 (C.A.9, 1954).

We prefer however to conclude this subject by relying on the United States Supreme Court decision in Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). The condemned language there under consideration had defined a reasonable doubt as "the kind of doubt * * * which you folks in the more serious and important affairs of your own lives *might* be willing to act upon."[2] The Supreme Court refused to find reversible error and concluded as follows:

"But we believe that the instruction as given was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some. A definition of a doubt as something the jury would

act upon would seem to create confusion rather than misapprehension. 'Attempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury,' Miles v. United States, 103 U.S. 304, 312, 26 L.Ed. 481 [484], and we feel that, taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury."

Appellant seeks to distinguish Holland by emphasizing that the instruction before us uses "would" instead of the "might" which in Holland preceded the words "be willing to act upon." Such nuance is without substance.

Judgment affirmed.

---

2. While the Supreme Court in Holland did cast some doubt on the propriety of such a charge by stating, "We think that this section of the charge should have been in terms of the kind of doubt that would make a person hesitate to act * * * rather than the kind on which he would be willing to act." id., 75 S.Ct. p. 138, the Court did uphold the charge as given since the instructions "taken as a whole" were not prejudicial. Unlike the cases of Scurry v. United States, and Jones v. United States (supra), the instant case, as the Holland case, deals with instructions which cannot be considered prejudicial when read in their entirety.