**UNITED STATES of America,**
**Appellee,**

v.

**Donald William BROWNING, Appellant.**
**No. 11731.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 9, 1968.

Decided Feb. 6, 1968.

Harry N. Barton, Charleston, W. Va., (Court-appointed counsel) for appellant.

Charles M. Love, III, Asst. U. S. Atty., (Milton J. Ferguson, U. S. Atty., and W. Warren Upton, Asst. U. S. Atty., on brief) for appellee.

Before SOBELOFF and BOREMAN, Circuit Judges, and KELLAM, District Judge.

KELLAM, District Judge:

Donald William Browning was convicted by a jury for (1) passing and uttering, and (2) possessing counterfeit $20.00 Federal Reserve Notes, with intent to defraud the United States, in violation of 18 U.S.C. § 472. He contended (1) the evidence is insufficient to sustain the conviction, and (2) a new trial should be granted because of government counsel's improper argument to the jury. We find no error and accordingly affirm.

The evidence and circumstances, including reasonable inferences drawn therefrom, must be viewed in the light most favorable to the government, and the verdict must be upheld if there is evidence to support it. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L. Ed. 680; Moore v. United States, 271 F. 2d 564 (4th Cir. 1959); United States v. Lowery, 306 F.2d 133 (4th Cir. 1961); United States v. Luxenberg, 374 F.2d 241 (6th Cir. 1967).

It is conceded that the two $20.00 Federal Reserve Notes are counterfeit. Appellant admits the passing or possession, but defends on the theory that he did not know the bills were counterfeit, a necessary element of the crime.[1] He says the mere possession or passing of the bills does not constitute the offense charged; that there must be intent to defraud.[2] He contends the evidence was insufficient to sustain a conviction on the question of intent.

Direct proof of intent is not necessary. It may be inferred from the acts of the parties and the facts and circumstances of the case. It rarely can be shown by direct evidence.[3] Collateral and related conduct may be considered by the jury for the purpose.

The weight and credibility of the testimony of the witnesses and whether or not the criminal intent existed was for the jury to determine.[4]

Plaintiff was a resident of Ohio. He and his wife, with one of their children,

---

1. United States v. Carll, 105 U.S. 611, 613, 26 L.Ed. 1135; United States v. Brown, 348 F.2d 661 (2d Cir. 1965).

2. Price v. United States, 70 F.2d 467 (4th Cir. 1934); United States v. King, 326 F.2d 415 (6th Cir. 1964), cert. denied 377 U.S. 957, 84 S.Ct. 1637, 12 L.Ed.2d 500; United States v. Forzano, 190 F.2d 687 (2d Cir. 1951); United States v. Releford, 352 F.2d 36 (6th Cir. 1965), cert.

denied 382 U.S. 984, 86 S.Ct. 562, 15 L. Ed.2d 473.

3. United States v. Carlson, 359 F.2d 592 (3d Cir. 1966).

4. Id: Price v. United States, 70 F.2d 467 (4th Cir. 1934); United States v. Luxenberg, 374 F.2d 241 (6th Cir. 1967); Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288; Stewart v. United States, 311 F.2d 109 (9th Cir. 1962).

had driven to Jackson County, West Virginia, for a visit with his wife's family. On the afternoon of that day he and his wife started on a drive to Boone County, West Virginia, for a visit with defendant's family. On the way he and his wife argued, as a result of which she left the car in Ripley. He drove on and decided to stop in Charleston, parked his car and entered a small bar. He went first to the rest room, returned, ordered a beer and a pack of cigarettes and gave the bartender a $20.00 bill in payment. He looked pale to the bartender. The bartender said the bill "looked like play-money." When the bartender said to him, "You know this is counterfeit money," defendant replied "No. I read about it but I didn't know I had it." During this discussion a police officer entered the bar and took his place at the bar beside defendant. The bartender handed the bill to the police officer. The bill was dark in color and was off color on the back. When the officer asked defendant if he had any more, he took another one out of his billfold. When asked where he got the bills, he said he didn't know. Asked if he wanted to make a statement or tell anything about the bills, he said, "I don't have a thing to say." Defendant testified at his trial that he told the Secret Service Agent he "might have gotten them at the grocery store," or the "race track," or "out of a poker game," but his best recollection was it was either the race track or the grocery store. He offered no further explanation. He worked as a printer slotter operator, printing labels on corrugated boxes.

■ The jury had a right to infer from the evidence that defendant entered the bar and went to the rest room for the purpose of "casing the place"; that he selected a bar as the place to pass the bill because it would be dimly lighted; that in such a place a casual look at the bills would not alert anyone that they were not genuine. His first failure to make an explanation, and the later limited explanation, his action in taking the second bill from his wallet in response to the officer's question as to whether he had any more bills, without any explanation or further statements, were incriminating circumstances for the consideration of the jury, and inconsistent with his innocence. The only other currency in his billfold consisted of two good $20.00 notes. The jury having refused to accept his explanation, the verdict is amply supported by the evidence.[5]

■■ Defendant complains that government counsel's argument to the jury was not proper when he, in part, argued that defendant had in his possession (1) "two of the lousiest counterfeit bills I think I have seen—they are not very good ones, and this man is a printer," and (2) his saying he got these bills "at a race track" where thousands of dollars change hands, "I just don't believe it," and—"I don't believe a merchant in a grocery store would pass out a bill like that." No objection was made at the time of argument, the time when it should have been raised. The question is raised for the first time in this Court. Counsel are advocates and are given wide range in arguing the facts and any proper inferences to be drawn from the evidence. They may argue matters which are common knowledge, but they should not urge their opinions upon the jury or express what they believe. In opening statement government counsel told the jury that the evidence would come from the witness stand and the law from the Court and that anything that he said which was contrary to what the jury heard from the witness stand

---

5. For cases of similar facts held as sufficient to support a verdict see Price v. United States, 70 F.2d 467 (4th Cir. 1934); Moore v. United States, 375 F.2d 877 (8th Cir. 1967); United States v. Releford, 352 F.2d 36 (6th Cir. 1965), cert. denied 382 U.S. 984, 86 S.Ct. 562, 15 L.Ed.2d 473; United States v. King, 326 F.2d 415 (6th Cir. 1964), cert. denied 377 U.S. 957, 84 S.Ct. 1637, 12 L.Ed.2d 500; United States v. Carlson, 359 F.2d 592 (3d Cir. 1966); Peters v. United States, 376 F.2d 839 (5th Cir. 1967); United States v. Brown 348 F.2d 661 (2d Cir. 1965), cert. denied 382 U.S. 904, 86 S.Ct. 240, 15 L.Ed.2d 157.

or from the Court should be disregarded by them, because the jury was the final arbiter of the facts. Likewise the Court charged the jury that they were the sole judges of the facts, and that any recalling of the facts by counsel or any inferences "drawn from the evidence or suggestions of inferences by either counsel" were not binding upon the jury. Under the facts and circumstances there was no error. Orebo v. United States, 293 F.2d 747 (9th Cir. 1961); Chamley v. United States, 376 F.2d 57 (7th Cir. 1967); United States v. Aadal, 368 F.2d 962 (2d Cir. 1966), cert. denied 386 U.S. 970, 87 S.Ct. 1161, 18 L.Ed.2d 130; See Lawn v. United States, 355 U.S. 339, Note 15 page 359, 78 S.Ct. 311, 2 L. Ed. 321.

Affirmed.