**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 06-4698**

─────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANDRES OCAMPO,

Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Middle District of North Carolina, at Durham.  James A. Beaty, Jr., District Judge. (1:05-cr-00380-JAB-4)

─────────────

Submitted:  February 22, 2007        Decided:  March 16, 2007

─────────────

Before NIEMEYER and TRAXLER, Circuit Judges, and HAMILTON, Senior Circuit Judge.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

James D. Cowan, Jr., SMITH MOORE, L.L.P., Greensboro, North Carolina; Laura M. Loyek, SMITH MOORE, L.L.P., Raleigh, North Carolina, for Appellant.  Anna Mills Wagoner, United States Attorney, L. Patrick Auld, Assistant United States Attorney, Deputy Chief, Criminal Division, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Andres Ocampo was convicted by a jury of conspiracy to possess, conceal, and pass counterfeit federal reserve notes, see 18 U.S.C.A. § 371 (West 2000); possessing and concealing counterfeit federal reserve notes, see 18 U.S.C.A. § 472 (West 2000); possession of a firearm and ammunition by an illegal alien, see 18 U.S.C.A. § 922(g)(5) (West 2000); and making false statements to a federal agent, see 18 U.S.C.A. § 1001(a)(2) (West 2000 & Supp. 2006). The district court sentenced Ocampo to 46 months imprisonment, to be followed by two years of supervised release. Ocampo appeals, challenging the sufficiency of the evidence underlying each conviction.[1] We affirm.

"A defendant challenging the sufficiency of the evidence to support his conviction bears a heavy burden. In reviewing the sufficiency of the evidence supporting a criminal conviction, our role is limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support it." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (citations and internal quotation marks omitted). "[S]ubstantial evidence is evidence that a reasonable finder of

---

[1]Ocampo also challenges his sentence. The district court repeatedly stated that it was treating Sentencing Guidelines as advisory, and the factual findings made by the district court at sentencing were therefore consistent with the requirements of United States v. Booker, 543 U.S. 220 (2005). Ocampo's sentencing challenge is therefore without merit.

fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

Ocampo was one of four occupants of a small car that the police found on a Sunday at 2:30 a.m. parked in front of a closed auto parts store in Asheboro, North Carolina. The driver agreed to a search of the car, which revealed a 9-mm handgun gun and ammunition, along with nearly $20,000 in medium-quality counterfeit currency. The gun was found on the backseat floorboard of the car, under the front passenger seat. The counterfeit currency was found in two locations--on the backside of the driver's headrest, hidden under the seat cover, and inside a plastic grocery bag that was wedged in between the back, passenger-side seat and the center "hump" that separated the back seats. Wedged in beside the seat along with the currency was a box containing extra ammunition for the gun.

Ocampo was seated in the back, behind the front passenger seat. Thus, the gun was found in a spot that was at Ocampo's feet, and the ammunition and a portion of the currency were wedged in beside the seat that Ocampo occupied. Ocampo's fingerprint was found on a plastic sleeve inside the ammunition box, and thirty-four of Ocampo's fingerprints and palm prints were found on the currency. Given the fingerprint evidence and the location of the

gun and ammunition relative to Ocampo's position in the car, the jury could reasonably have concluded that Ocampo was in possession of the gun and ammunition. See Burgos, 94 F.3d at 873 ("Possession [of contraband] may be actual or constructive . . . and need not be exclusive, but may be shared with others. Constructive possession may be proved by demonstrating that the defendant exercised, or had the power to exercise, dominion and control over the item." (citation and internal quotation marks omitted)). Accordingly, the government presented sufficient evidence to support Ocampo's § 922(g) conviction.

The counterfeit possession charge required the government to prove that Ocampo possessed or concealed the counterfeit currency with knowledge that the currency was counterfeit and with an intent to defraud. See United States v. Leftenant, 341 F.3d 338, 347 (4th Cir. 2003). The location of the currency in the car, along with Ocampo's fingerprints on it, was sufficient for the jury to conclude that Ocampo was in possession of the currency. Moreover, the currency was paper-clipped together in multiple stacks and hidden in a car, which is far from the usual means of carrying legitimate currency. The currency consisted of nearly two hundred $100 bills, each bearing one of four serial numbers, along with nine $20 bills, each bearing the same serial number. Although Ocampo told investigators that he had no knowledge of the currency, the fingerprint evidence showed that Ocampo had extensively handled

- 4 -

it.[2]  When the evidence is considered in its entirety, we believe it was sufficient to satisfy each element of § 472.  See United States v. Combs, 672 F.2d 574, 576 (6th Cir. 1982) (explaining that a jury "could logically infer knowledge of the counterfeit nature of the bills from the fact that the bills were in [the defendant's] possession, were in large quantities, and were unusually packaged"); United States v. Browning, 390 F.2d 511, 512 (4th Cir. 1968) ("Direct proof of intent is not necessary.  It may be inferred from the acts of the parties and the facts and circumstances of the case. It rarely can be shown by direct evidence.  Collateral and related conduct may be considered by the jury for the purpose." (footnote omitted)); see also United States v. Callanan, 450 F.2d 145, 148 (4th Cir. 1971) ("[G]uilty knowledge and willfulness may be inferred from ... false explanations ....").

The counterfeit conspiracy charge required the government to also prove the existence of an agreement to possess counterfeit currency.  See Burgos, 94 F.3d at 857 (The "gravamen of the crime of conspiracy is an agreement to effectuate a criminal act" (internal quotation marks omitted)).  We believe the government

---

[2]Ocampo contends that the government's evidence showed that he denied knowing that the currency was counterfeit, not that he denied knowledge of the currency that was found in the car.  While that is certainly a plausible interpretation of the evidence, the evidence also could be viewed as establishing that Ocampo denied knowledge of the currency itself.  See J.A. 168.  Our standard of review, of course, requires that we give the government the benefit of all inferences that reasonably may be drawn from the evidence. See Burgos, 94 F.3d at 862.

- 5 -

presented sufficient evidence from which the jury could conclude that such an agreement existed.

Johnny Martinez-Orozco, the driver of the car, told investigators that he and Josue Gonzalez left from Florida on Saturday to visit a cousin in Asheboro. Martinez-Orozco stated that he did not know Ocampo or Alejandro Reinoso (the fourth passenger) before that day, when he and Gonzalez had picked them up at a laundromat in Greenwood, South Carolina. A map with the town of Greenwood circled and its name written in the margin was found in the car, but Martinez-Orozco offered no explanation for why he picked up two strangers and drove them to Asheboro. Although Reinoso told investigators that he had met Gonzalez once before, Ocampo told investigators that he did not know any of the other men in the car before they picked him up at the laundromat.

Each of the men separately told investigators that they were traveling from Florida or South Carolina on a 24-hour turn-around trip to visit an unnamed friend or relative in Asheboro. Ocampo first stated that he was going to visit a cousin in Asheboro, but he later claimed that he was going to visit a friend. Although each of the men denied knowledge of the counterfeit currency, fingerprints of each were found on the currency.

The explanations offered by the men were essentially identical, and the jury could reasonably have concluded that the explanations were the product of a coordinated effort by the men to

provide a legitimate purpose for their actions. The coordinated cover story, and the implausible nature of the cover story (which gave no explanation as to how four relative strangers from different states came to be riding together in a small car, in which was hidden a large quantity of counterfeit currency that had been handled by all four men), is evidence that the jury could consider when determining the existence of conspiracy. When that evidence is considered along with all of the other circumstances of this case, we believe that a reasonable jury could have found that an agreement to counterfeit currency existed and that Ocampo was a knowing participant. See Burgos, 94 F.3d at 858 (explaining that "[c]ircumstantial evidence tending to prove a conspiracy may consist of a defendant's relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy," and that a conspiracy "may be inferred from a development and collocation of circumstances" (internal quotation marks and alterations omitted)). We therefore reject Ocampo's challenge to the sufficiency of the evidence supporting the conspiracy conviction.

We likewise reject Ocampo's challenge to the sufficiency of the evidence supporting his conviction for making false statements. That charge required the government to prove "(1) that the defendant made a false statement to a governmental agency . . .; (2) [that] the defendant acted knowingly or willfully; and (3)

[that] the false statement . . . was material to a matter within the jurisdiction of the agency." United States v. Sarihifard, 155 F.3d 301, 306 (4th Cir. 1998); see 18 U.S.C.A. § 1001. Ocampo contends that the government failed to prove that the statements charged in the indictment were false or material. We disagree.

Ocampo told the Secret Service agent investigating the case that he did not know about the currency in the car, and this statement was one of the bases for the § 1001 charge. While Ocampo contends that he only disclaimed knowledge that the currency was counterfeit, we must, as explained above, view the evidence in the light most favorable to the government. Because the agent testified that he asked Ocampo about his knowledge of "money," the jury could reasonably conclude that Ocampo's denial was a denial of any knowledge of the currency itself, not simply a denial of the knowledge that the currency was counterfeit. The evidence showing Ocampo's fingerprints and palm prints on the currency thus provided a sufficient basis for the jury to conclude that Ocampo's denial was false. The jury could also have found the statement to be material, because Ocampo's knowledge of the currency had the capacity to affect the government's decision to prosecute. See United States v. Arch Trading Co., 987 F.2d 1087, 1095 (4th Cir. 1993) (explaining that a fact about a matter within an agency's jurisdiction is material under § 1001 if it "has a natural tendency to influence agency action or is capable of influencing agency

action" (internal quotation marks omitted)).  Whether or not the statement <u>actually</u> affected the agency's decision is irrelevant. <u>See</u> <u>id.</u>  We therefore reject Ocampo's challenge to the sufficiency of the evidence supporting his § 1001 conviction.[3]

For the foregoing reasons, we affirm Ocampo's conviction and sentence.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

---

[3]Because the evidence of Ocampo's statement about his knowledge of the currency is enough to support the § 1001 conviction, we need not consider whether the other statements alleged in the indictment also satisfied the requirements of § 1001.  <u>See</u> <u>Turner v. United States</u>, 396 U.S. 398, 420 (1970) ("The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as Turner's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged.").