Charles Myron **MOORE**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 18404.

United States Court of Appeals
Eighth Circuit.

April 19, 1967.

Rehearing Denied May 16, 1967.

J. Paul Allred, Jr., St. Louis, Mo., for appellant. Martin Schiff, Jr., Clayton, Mo., was with him on the brief.

Stephen H. Gilmore, Asst. U. S. Atty., St. Louis, Mo., for appellee and Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., was with him on the brief.

Before BLACKMUN, MEHAFFY and GIBSON, Circuit Judges.

MEHAFFY, Circuit Judge.

Charles Myron Moore, appellant-defendant, was tried to a jury and convicted on three counts of passing counterfeit money with intent to defraud in violation of 18 U.S.C.A. § 472. We affirm.

The sole question raised by appellant's brief is the sufficiency of the evidence to sustain the convictions. Defendant at the conclusion of the Government's evidence moved for a judgment of acquittal. This motion was made orally and counsel concluded by saying "and the Defendant requests permission to submit a written motion to the same effect at the close of all of this case." The court responded as follows: "Permission is so granted to submit a written motion. Ruling will be reserved on this motion." Defendant did not press for a ruling at the time the motion was made, and from the language used, the court would have been warranted in interpreting the statement as defense counsel's intention to immediately offer evidence on defendant's behalf. This is what he did, but nevertheless on appeal he takes the position that Fed.R.Crim.P. 29(a) is mandatory in requiring a ruling at this stage of the proceeding; and that failure to then rule forced defendant to adduce evidence which supplied additional incriminating testimony. There is respectable authority, however, holding that there is no prejudicial error in the trial court's reserving ruling on defendant's motion for judgment at the close of the Government's case where evidence at the time the motion was made suffices to present a jury question as to defendant's guilt. United States v. Godel, 361 F.2d 21 (4th Cir. 1966); Weathers v. United States, 322 F.2d 566 (9th Cir. 1963). Additionally, the Second Circuit has recently ruled in United States v. Rosengarten, 357 F.2d 263, 266 (2nd Cir. 1966):

"It is settled law that a defendant who offers evidence after the denial of a motion for acquittal at the close of the Government's case in chief waives any claim as to the sufficiency of that case considered alone. United States v. Calderon, 348 U.S. 160, 164 n. 1, 75 S.Ct. 186, 99 L.Ed. 202 (1954); but see The Motion for Acquittal: a Neglected Safeguard, 70 Yale L.J. 1151 (1961). We have applied this rule when, as here, the judge ignored the command of F.R.Crim.P. 29(a) and reserved decision on such a motion, see United States v. Goldstein, 168 F.2d 666, 669–670 (2 Cir. 1948), and the Supreme Court's approving citation of

the *Goldstein* decision in *Calderon,* supra, indicates that it perceives no basis for distinguishing between the two situations, at least in the absence of a demand for a ruling on the motion and explicit refusal by the judge to obey the mandate of the Rule. Quite apart from this, we would consider the Government's case in chief sufficient to support Rosengarten's conviction."

■ Aside from any waiver question, there could not be any prejudicial error if at the time the motion was made the Government had produced sufficient evidence to justify submission of the case to the jury. We will, therefore, initially summarize only the Government's evidence which, standing alone, in our opinion, is sufficient to sustain the jury's findings of guilt.

On the afternoon of October 22, 1965 between 4:30 and 5:30 p. m., defendant entered the Silhouette Lounge and ordered a scotch and water, paying for it with a ten dollar counterfeit bill. Mrs. Ambrose, who with her husband operated the Silhouette, gave defendant change for the bill. After defendant's departure, Mrs. Ambrose, being short of change, sent her fifteen year old son to a nearby supermarket to obtain change for the bill received from the defendant. The clerk at the supermarket refused to change the bill, telling the boy it was counterfeit. The boy then returned the counterfeit bill to his mother.

Defendant was seen to leave the Silhouette Lounge and walk across the street to Maylock's Delicatessen where he purchased a loaf of bread, a quart of milk and a Hostess "twinkie." He paid for these items with a ten dollar bill which he laid on the counter, face up, while Mrs. Maylock sacked the groceries. Mrs. Maylock gave defendant change but as she put the bill in the cash register she noticed it was dark green on the back. She asked another customer to note the direction of the defendant and turned the bill over to her husband for examination.

A week later on the evening of October 29, 1965, some time between 10:00 and 10:30 p. m., defendant entered the Krueger Bar in University City. As the bar was crowded, defendant stood behind the customers sitting on the stools and consumed two drinks of scotch and laid a counterfeit bill on the bar. The bartender put the change on the bar, which defendant retrieved and departed. The bartender noticed and testified that the bill had "a bad look and it just didn't feel like regular money," and he gave it to a police officer around 11:00 o'clock that night.

A description of the defendant and an arrest order had been put on teletype on the evening of October 22, 1965, but he was not apprehended until the latter part of January, 1966. Between the time of making the purchases with which he was charged and trial date, defendant had changed the color of his hair.

The three counterfeit bills passed by defendant were identical as to serial number, plate number and denomination. In each instance, defendant passed the bills for small purchases of about one dollar. The defects in the bills were evidently obvious, as Mrs. Maylock immediately noticed that the coloring on the bill was bad and both the bartender at the Krueger Bar and the grocery clerk immediately detected the spuriousness of the bills. In addition to this evidence, during cross-examination and in response to defense counsel's question whether defendant was charged with passing any other bills, a secret service agent replied that defendant was associated with but not charged with passing two other bills at the Pancake House and the Valley Farm at about the same time in October.

■ The District Court must, as do we, in passing on this issue, view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government. Coon v.

United States, 360 F.2d 550 (8th Cir. 1966).[1]

In Rood v. United States, 340 F.2d 506 (8th Cir. 1965), cert. denied, 381 U.S. 906, 85 S.Ct. 1452, 14 L.Ed.2d 287 (1965), this court sustained a conviction for violation of this statute where it was shown that the defendant passed two spurious twenty dollar bills within a period of twenty-four hours. We think the evidence in the instant case is stronger than that in Rood.[2] As observed by counsel for defendant, each of such cases must stand on its own peculiar facts. The Government's case clearly presented a jury question as to defendant's guilt. If defendant had insisted on a ruling on his motion at the close of the Government's case, the trial court would have been compelled to reject the motion. It follows that no prejudicial error resulted from the trial court's action in taking the motion under advisement.

We have referred only to the evidence in the Government's case adduced prior to defendant's motion for judgment of acquittal. At trial defendant took the stand and admitted that he handled a lot of cash. He did not deny passing the counterfeit bills for which he was charged, but he did deny knowledge they were counterfeit. Probably the most damaging statement defendant made in testimony was his account of the Pancake House incident. There he was challenged for passing an allegedly spurious bill, whereupon he tore the bill in half and made restitution with a genuine bill. This is hardly the reaction to be expected from one innocent of knowledge that a bill he passed was counterfeit.

Although not raised at the trial below or in briefs, defendant, for the first time, in oral argument urgently contended that the court erred in giving the following instruction:

"It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused."

Preliminarily, we note defendant failed to comply with Fed.R.Crim.P. 30, requiring an objection to the instruction. Compliance with this rule would have afforded the trial court an opportunity to either omit the instruction or change its language in such a fashion as to make it innocuous. Recognizing this, counsel insists that plain error exists affecting substantial rights which we can recognize under Fed.R.Crim.P. 52 (b).

This and other courts have criticized giving of this or a similar instruction in certain cases. We held in Imholte v. United States, 226 F.2d 585, 591 (8th Cir. 1955), that it is better not to give the instruction in a case where intent is not inherent in the act itself but its inclusion in a charge does not constitute prejudicial error where " * * * the charge considered as a whole correctly stated the law with sufficient clarity as

---

1. Other Eighth Circuit cases to the same effect are Jacobs v. United States, 359 F.2d 960 (8th Cir. 1966); West v. United States, 359 F.2d 50 (8th Cir. 1966); Coil v. United States, 343 F.2d 573 (8th Cir. 1965), cert. denied, 382 U.S. 821, 86 S.Ct. 48, 15 L.Ed.2d 67 (1965); Lucas v. United States, 343 F.2d 1 (8th Cir. 1965), cert. denied, 382 U.S. 862, 86 S. Ct. 125, 15 L.Ed.2d 100 (1965); Beatrice Foods Co. v. United States, 312 F.2d 29 (8th Cir. 1963), cert. denied, 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199 (1963).

2. See also and compare United States v. Carlson, 359 F.2d 592 (3rd Cir. 1966); United States v. Releford, 352 F.2d 36 (6th Cir. 1965), cert. denied, 382 U.S. 984, 86 S.Ct. 562, 15 L.Ed.2d 473 (1966); United States v. Jonikas, 187 F.2d 240 (7th Cir. 1951), cert. denied, 344 U.S. 877, 73 S.Ct. 171, 97 L.Ed. 679 (1952); Bell v. United States, 100 F.2d 474 (5th Cir. 1938).

not to be misleading." Accord, Sherwin v. United States, 320 F.2d 137 (9th Cir. 1963), cert. denied, 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420 (1964).

In Mann v. United States, 319 F.2d 404 (5th Cir. 1963), cert. denied, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964), the court held the giving of this instruction was plain error requiring a reversal in an income tax conviction.

In United States v. Releford, 352 F.2d 36 (6th Cir. 1965), cert. denied, 382 U.S. 984, 86 S.Ct. 562, 15 L.Ed.2d 473 (1966), the court rejected the contention defendant makes here, reasoning that giving of the instruction was not reversible error where the proof of guilt was strong.[3]

In our opinion, the evidence in this case is strong and convincing. Defendant did not deny passing the counterfeit bills and the pattern used in passing them by one who handled a lot of money, as defendant admittedly did, amounts to strengthful proof of scienter.

The trial court clearly and plainly instructed the jury on defendant's presumption of innocence, the burden resting on the Government to prove defendant's guilt beyond a reasonable doubt, and specifically upon the two essential elements required in this type case, being the act of passing a counterfeit obligation and the doing so with intent to defraud. The court cautioned the jury in addition to defining the element of intent that, in order to find defendant guilty, they must find and believe that his acts were intentionally and knowingly done. Furthermore, the jury was admonished that it was their sworn duty to acquit defendant unless convinced beyond a reasonable doubt that defendant knew of the counterfeit character of the bills.[4]

3. In United States v. Releford, supra, note 2, the court stated at page 40:

"The court charged the jury as follows:

" 'It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts which he knowingly does or knowingly omits to do. So, unless the contrary appears to you from the evidence, you may draw the inference that Mr. Releford intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act which he knowingly did or knowingly omitted.'

"Relying on the Fifth Circuit's decision in Mann v. United States, 319 F.2d 404, 407 (1963) that such an instruction was erroneous, appellant here charges error in the giving of it. We have had occasion to characterize the language of the involved instruction as clumsy and inartistic` but in United States v. Denton, 336 F.2d 785, 788 (C. A. 6, 1964) where the proof of guilt was strong as it is here, we held that the use of it was not reversible error. Speaking for this court Judge Edwards there said:

" 'This instruction has been recently and vigorously criticized by the Fifth Circuit, Mann v. United States, 319 F. 2d 404 (C.A. 5, 1963), cert. denied 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964). It has also been held more recently by the Ninth Circuit not to constitute prejudicial error under the whole instruction on intent therein given. Sherwin v. United States, 320 F. 2d 137 (C.A. 9, 1963), cert. denied 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420, rehearing denied 376 U.S. 946, 84 S.Ct. 796, 11 L.Ed.2d 771 (1964). We feel that the second sentence of the instruction quoted above is at best clumsy and, if taken alone, confusing. On this record, however, and under a total instruction on intent very similar to that in the Sherwin case, we do not think the error affected any "substantial right" of defendant.' 336 F.2d 788.

"We consider that such observations are appropriate and controlling here."

For other cases on the subject see and cf. Agnew v. United States, 165 U.S. 36, 53, 17 S.Ct. 235, 41 L.Ed. 624 (1897); United States v. Barash, 365 F.2d 395, 402, 403 (2nd Cir. 1966); Estes v. United States, 335 F.2d 609, 615–617 (5th Cir. 1964), cert. denied, 379 U.S. 964, 85 S. Ct. 656, 13 L.Ed.2d 559 (1965).

4. Excerpts from the court's charge:

"Two essential elements are required to be proved beyond a reasonable doubt in order to establish the offenses charged in each count of the indictment:

"First, the act or acts of passing or uttering any counterfeited obligation of the United States, namely, currency in

Upon consideration of the charge as a whole, it would be unrealistic for us to assume that the jury was misled, confused or in any manner swayed or influenced by the giving of the instruction. Additionally, we are mindful of Fed.R.Crim.P. 52(a). In discussing this rule in our recent case of Gresham v. United States, 374 F.2d 389 (8th Cir. March 30, 1967), Judge Matthes aptly observed:

"Rule 52(a), Fed.R.Crim.P., provides that any error which does not affect substantial rights shall be disregarded. The Courts have uniformly held that prejudicial error must be shown before a reversal is justified. (Citations omitted.) The strength of the Government's case is an important factor in determining the existence of prejudicial error. (Citations omitted.)"

■■■ As has often been stated, a defendant is entitled to a fair trial but not a perfect trial. We are convinced on the record here that the defendant received a fair trial, free of prejudicial error, and the judgment is affirmed.

the denomination of ten dollars ($10.00) as charged; and

"Second, doing such act with intent to defraud.

"As stated before, the burden is upon the government to prove beyond a reasonable doubt every essential element of the crime charged.

"It is the position of the defendant that at the time the defendant possessed and passed the counterfeit currency mentioned in the evidence that he did so without knowledge that the currency was counterfeit and thereby had no intent to defraud. Accordingly, if you are not convinced beyond a reasonable doubt that the defendant knew of the counterfeit character of the United States currency mentioned in the evidence, then it will be [your] sworn duty to find the defendant not guilty and acquit the defendant.

"Now, in a criminal case, the matter of intent is, of course, an essential element which must exist, in order for the accused to be criminally liable. Therefore, in order to find this defendant guilty, you must not only believe that he did the acts complained of, and of which he stands charged, but you must also believe that the acts were intentional and knowingly done by the defendant.

" 'Knowingly' as used in these instructions means that state of mind wherein a defendant was in possession of facts from which he knew, or was aware that he could not legally do or fail to do the acts whereon he here stands charged.

"You will note that the charges in the indictment are alleged to have been done with the 'intent to defraud.' To act with 'intent to defraud' means to act knowingly and with the specific intent to deceive or cheat for the purpose of causing some loss to another or bring about some financial gain to one's self."