UNITED STATES of America,
Appellee,

v.

Ronald Leroy DIGGS, a/k/a Donald
E. Wilson, Appellant.

No. 75–1417.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1975.

Decided Dec. 30, 1975.

**510**

Frank G. (Jerry) Wieslander, Altoona, Iowa, for appellant.

Paul A. Zoss, Asst. U. S. Atty., Des Moines, Iowa, for appellee.

Before HEANEY, BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Ronald Leroy Diggs, defendant below, was found guilty by a jury in the United States District Court for the Southern District of Iowa of having wilfully and with fraudulent intent transported and caused to be transported in interstate commerce from Des Moines, Iowa to Los Angeles, California a falsely made, forged, and counterfeited security, to-wit, a check in the sum of $235.00 in favor of "Joyce Smith", purportedly drawn on a California bank by a division of Rockwell International, a large insurance company operating in California.[1] 18 U.S.C. § 2314. Judgment was entered on the verdict, and the defendant appeals.

For reversal the defendant contends principally that the district court erred in submitting the case to the jury and that the evidence was not sufficient to sustain the verdict; another serious contention is that the district court erred in giving over the objection of the defendant Instruction No. 13 which dealt with proof of guilty knowledge and fraudulent intent.

## I.

The theory of the government was that the defendant knowingly and wilfully caused his wife, Monica Louise Diggs, to pass the check described in the indictment and other checks in Des Moines, thus causing them to move through regular banking channels in interstate commerce to California, or that the defendant knowingly and wilfully aided and abetted his wife in so doing. Under the government's theory defendant would be considered guilty as a principal under 18 U.S.C. § 2.

---

1. The check bore serial number 457,836 and voucher number 7788; it was dated October 11, 1974. The same check was described in one of the counts of a separate indictment returned by the grand jury against defendant's wife, Monica Louise Diggs. That indictment also described two other Rockwell International checks payable to "Joyce Smith." Both of those other checks bore serial number 457,836 and both were dated October 11, 1974; one of those checks was in the sum of $235.00; the other was in the sum of $205.00.

The indictment charged that the offense was committed on or about October 17, 1974. The undisputed evidence is to the effect that prior to that date a number of serially numbered checks were printed for Rockwell by a commercial printer; one of those checks bore the serial number 457,836. The checks were designed to be filled out manually by employees of the particular division of Rockwell for the use of which the checks had been printed. The manual completion of the checks involved typing in a date, a voucher number, the name of the payee, and the amount of the check. From the exhibits before us, it is not entirely clear whether the blank checks bore a facsimile signature of an authorized official of Rockwell or whether they had to be signed manually prior to their issuance.

It is inferable from the record that a large number of copies of Check No. 457,836 were made by some unauthorized person and circulated. The defendant admitted that he came into possession of a number of the copies which for convenience we will call the "checks."

The undisputed evidence establishes that on or about October 17, 1974 a blonde woman, resembling Mrs. Diggs, cashed the check described in the indictment at the Des Moines Savings and Loan Association. On or about the same date a blonde woman, also resembling Mrs. Diggs, cashed another of the checks that have been described at a Hinky Dinky Store in Des Moines. When the check was cashed at the Hinky Dinky Store, a surveillance camera photographed both the check and the person cashing it; the photograph of the individual cashing the check was imperfect; however, it is possible to ascertain from the photograph that the check was cashed by a blonde woman not dissimilar in appearance to Mrs. Diggs. The check, as it appears in the photograph, is clearly legible.

Both of the checks moved in interstate commerce from Des Moines to Los Angeles where they were dishonored and returned to Des Moines. In the course of a subsequent or on-going investigation by the FBI and the Des Moines Police Department a latent fingerprint of the defendant was found on the check that was cashed at the Savings and Loan Association.

The defendant and his wife were separately indicted in late March, 1975 and were arrested by FBI agents and local officers at their apartment in Cedar Rapids, Iowa, on March 27, 1975. The two subjects were separated, and the defendant was questioned by two Special Agents of the FBI after he had been advised adequately of his "Miranda rights." The defendant admitted that he had received seven or eight of the checks from an unidentified individual, that he turned three or four of them over to his wife, and that he gave the rest of them to a third person likewise unidentified. He also admitted that he knew that his wife had cashed two or three of the checks.

At the trial of the case the agents were permitted to testify as to the admissions just mentioned, but their testimony as to other damaging admissions was suppressed on motion of the defendant on the ground that the existence of those admissions had not been disclosed to defense counsel in advance of trial as required by an omnibus hearing order entered by a United States Magistrate at an early stage of the proceedings.

Upon trial, the government introduced evidence justifying the jury in finding that the checks were not valid obligations of Rockwell and that they had moved in interstate commerce. Over the objections of the defendant the government was permitted to make proof with respect to the check passed at the Hinky Dinky Store as well as with respect to the check passed at the Savings and Loan Association and mentioned in the indictment. The evidence admitted included the photograph or photographs taken by the surveillance camera at the Hinky Dinky Store and a known photograph of Mrs. Diggs taken while she was in the custody of the Des Moines Police Department in May, 1974. And it was

proved by expert testimony that the latent fingerprint found on the check that was passed at the Savings and Loan Association was that of the defendant.

While employees of both the Savings and Loan Association and the Hinky Dinky Store testified that the respective checks were passed by a blonde woman with long hair, no witness was called upon to identify the police photograph of Mrs. Diggs as being that of the woman who had passed the checks.[2]

The third paragraph of 18 U.S.C. § 2314 under which defendant was indicted makes it a felony for any person "with unlawful or fraudulent intent" to transport in interstate commerce any falsely made, forged, altered or counterfeited securities "knowing the same to have been falsely made, forged, altered, or counterfeited." 18 U.S.C. § 2 upon which the government relies ultimately is as follows:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

In view of those statutory provisions, it was incumbent upon the government to prove by evidence, whether direct, circumstantial, or both, and beyond a reasonable doubt that when the defendant turned the Rockwell International checks over to his wife, he knew that they were spurious, and that he turned them over to her with the fraudulent intent that she pass them as true and genuine and with knowledge that she would pass them or attempt to do so. And if, as a matter of law, the government failed to introduce evidence suffi-cient to convince a jury beyond a reasonable doubt of the defendant's guilty knowledge and fraudulent intent, then it was the duty of the district court to grant the defendant's motions for entry of a judgment of acquittal.

In determining whether the government made a submissible case we are required to view the evidence in the light most favorable to the government and to give to the government the benefit of all reasonable inferences logically deducible from the evidence. *United States v. Shahane,* 517 F.2d 1173, 1174 (8th Cir.), and cases there cited. Moreover, we recognize that it is as competent for a jury to convict on circumstantial evidence as on direct evidence provided that the whole body of the evidence relied on by the government convinces a jury beyond a reasonable doubt that the defendant is guilty. *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Shahane, supra,* 517 F.2d at 1177; *United States v. Kye,* 411 F.2d 120, 122 (8th Cir. 1969); *United States v. Francisco,* 410 F.2d 1283 (8th Cir. 1969). And we also recognize that in some circumstances unexplained acts or omissions on the part of a defendant may justify inferences adverse to him. *United States v. Shahane, supra,* 517 F.2d at 1177–78.

Had the government been permitted to prove the admissions and other statements of the defendant which the district court properly excluded, there would have been little, if any, question with respect to the sufficiency of the evidence to carry the case to the jury and to sustain the verdict. But, in the absence of testimony as to those admissions and statements, we are forced to the conclusion that the case which the government made was simply too weak to go to the jury.

---

2. We note at this point that Mrs. Diggs was not present in the courtroom when her husband was tried. The case against her and the case against her husband had been consolidated and were to be tried together; however, she did not appear when the cases were called for trial, and her husband was tried alone. The charges against Mrs. Diggs were ultimately dismissed and she was turned over to a rehabilitative agency.

In the last analysis all that the government was able to prove was that the defendant at one time had a number of the checks in his possession, that he turned some of them over to his wife and the rest to an unidentified person, and that the defendant knew that his wife had cashed two or three of the checks. While it may be assumed perhaps that the defendant knew that the checks in his possession purported to be those of the same company, there is no evidence that he appreciated the fact that they all bore the same serial number. There is no evidence from which it can be determined whether "Joyce Smith" was or is a real person or whether the name of the payee in the checks that were cashed was that of a purely fictitious person. There is no evidence as to whether the checks were filled out when they came into the possession of the defendant or when he turned them over to his wife. And there is no evidence to explain the difference between the dates inserted in the checks and the date on which they were cashed, the time lapse amounting to almost a week. Moreover, there was evidence to the effect that when the blonde woman cashed the check at the Savings and Loan Association she was accompanied by a male other than the defendant who vouched for the woman and who endorsed the check that she cashed; the identity of this man was known to the Savings and Loan Association employee who cashed the check, but he was not called as a witness.

■ While the facts proved by the government were certainly suspicious, a jury is not justified in convicting a defendant on the basis of mere suspicion, speculation or conjecture. And we do not think that the deficiencies in the government's proof can be supplied by saying that if the defendant was innocent, he could have explained his connection with the checks and his actions with respect to them.

Should the case be tried again, the government might well be able to improve its evidentiary position by proving the statements and admissions that the district court excluded in the course of the original trial. And had the defendant moved for a new trial as an alternative to his prayer for a judgment of acquittal, we would order a new trial. *Sapir v. United States,* 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426 (1955); *Bryan v. United States,* 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950); *United States v. Koonce,* 485 F.2d 374, 381–82 (8th Cir. 1973); 2 Wright, Federal Practice & Procedure, Criminal, § 470, pp. 268–273.

■ While in the concluding sentence of his brief counsel for the defendant asks for a new trial as alternative relief, it does not appear that he moved for a new trial in the district court, and in such circumstances we feel constrained to reverse the judgment of that court and remand the case with directions for the entry of a judgment of acquittal. *Sapir v. United States* and *United States v. Koonce,* both *supra.*

## II.

The view that we take of the case renders it unnecessary for us to consider other contentions of the defendant including his attack on Instruction No. 13 of the district court. However, we wish to comment to some extent on that instruction and the attack thereon.

While defendant's complaint is directed primarily at the second paragraph of the instruction, it is desirable to set the instruction out in full.

Intent may be proved by circumstantial evidence. It rarely can be established by any other means. While witnesses may see and hear and thus be able to give direct evidence of what a defendant does or fails to do, there can be no eyewitness account of the state of mind with which the acts were done or omitted. But what a defendant does or fails to do may indicate intent or lack of intent to commit the offense charged.

It is reasonable to infer that a person ordinarily intends the natural and probable consequence of acts knowing-

ly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the inference that an accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by an accused.

In determining the issue as to intent, the jury is entitled to consider any statements made and acts done or omitted by the accused, and all facts and circumstances in evidence which may aid determination of state of mind.

The defendant contends that the giving of this instruction impermissibly shifted the burden of proof on the essential element of fraudulent intent and motive on the part of the defendant from the government to the defendant, and that the error was not cured by other instructions of the court dealing with presumption of innocence, burden of proof, and reasonable doubt.

The government argues that the instruction was not objectionable when the instructions are considered as a whole, and counsel for the government points out that the jury was not told that it was required to draw any particular inference or inferences from the evidence.

In support of his attack on the instruction in question, counsel for the defendant cites, among other cases, a number of Fifth Circuit decisions holding that the giving of an instruction including what is the second paragraph of Instruction No. 13 given in this case is reversible or even plain error. *United States v. Driscoll*, 454 F.2d 792 (5th Cir. 1972); *Henderson v. United States*, 425 F.2d 134 (5th Cir. 1970); *Mann v. United States*, 319 F.2d 404 (5th Cir.), *cert. denied*, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1963). It may be observed, however, that in what appears to be its latest decision on the subject, the Court of Appeals for the Fifth Circuit has held that the giving of the instruction is not necessarily error and that much depends upon the nature of the case and the quality of the conduct relied upon by the government as justifying an inference of guilty knowledge or fraudulent intent. *United States v. Durham*, 512 F.2d 1281 (5th Cir. 1975).

The language of Instruction No. 13 appears verbatim as Form 4.06 in Mathes, Jury Instructions and Forms for Federal Criminal Cases, 27 F.R.D. 39, 78 (1961). It has suffered severe judicial criticism and the giving of it has produced reversals. It does not appear in the more current Devitt & Blackmar, Federal Jury Practice and Instructions, and the authors of that work say that the propriety of using the second paragraph of the instruction is now "in severe doubt." 1 Devitt & Blackmar, op. cit., Form 13.06 and Notes thereto, pp. 276–78.

Speaking of the language in question the court in *United States v. Durham, supra*, 512 F.2d at 1284, had this to say:

The District Court gave a jury charge on intent which, in cases to be discussed hereinafter, has repeatedly met with the disapproval of this Court and which has necessitated several reversals, depending on the nature of the individual case. In the face of our repeated efforts to extinguish this instruction we find its continued use hard to comprehend, . . . ."

Paragraph 2 of Instruction No. 13 is no stranger to this court. It was before the court in *Moore v. United States*, 375 F.2d 877 (8th Cir.), *cert. denied*, 389 U.S. 844, 88 S.Ct. 92, 19 L.Ed.2d 110 (1967), a case in which fraudulent intent was an essential element of the offense charged. The question of the propriety of the language used was raised for the first time on appeal, and the ultimate question before the court was whether the use of the language complained of constituted "plain error" cognizable by the appellate court under Fed.R.Crim.P. 52(b).

In discussing the question the court referred to the earlier case of *Imholte v. United States*, 226 F.2d 585 (8th Cir. 1955), in which the district court had told the jury that "every person is presumed to intend 'the natural consequences of

his acts knowingly committed'", 226 F.2d at 590. With respect to that instruction the court had said that it "had better not have been given," 226 F.2d at 591. After citing that case and certain other cases, the *Moore* court concluded ultimately that the giving of an instruction containing the language challenged here is not "plain error" where the proof of guilt is strong and convincing and where the instructions taken as a whole are not misleading and clearly advise the jury that the defendant is presumed to be innocent, that the burden is on the government to prove his guilt by the evidence and beyond a reasonable doubt and that the defendant is never required to prove his innocence.

Had the government made a strong case against the defendant, we would have been inclined to hold that the giving of Instruction No. 13 was not prejudicially erroneous in view of other instructions of the district court. As has been seen, however, we do not consider that the government made even a submissible case, let alone a strong one. And even where the government makes a strong case, the giving of an instruction containing the language of the second paragraph of Instruction No. 13 is a dangerous practice. Further, it may be doubted that in any event the questioned language, to the extent that it has logical validity, really tells an intelligent jury anything that it does not know already. *See United States v. Barash,* 365 F.2d 395, 402 (2nd Cir. 1966).

Reversed and remanded with directions to the district court to enter a judgment of acquittal.