**UNITED STATES of America, Appellee,**

v.

**William Maynard BERRY, Jr., Appellant.**

**No. 79–1087.**

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1979.

Decided May 23, 1979.

John E. Pruniski, III, Little Rock, Ark., for appellant.

W. H. Dillahunty, U. S. Atty., and Fletcher Jackson, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before LAY, ROSS and HENLEY, Circuit Judges.

PER CURIAM.

William Maynard Berry, Jr. appeals from his conviction by jury verdict for uttering and possessing a counterfeit federal reserve note in violation of 18 U.S.C. § 472.[1] We affirm.

Berry does not dispute that he was identified at trial by eyewitnesses, fingerprints, vehicle type, color and license plate number as the person who passed four counterfeit bills in three different states. He argues that evidence of guilty knowledge and intent to defraud was insufficient to support his conviction and that the counterfeit bills should not have been admitted in evidence because their color was changed by the fingerprint testing process.

Section 472 requires proof that the defendant knew the bills were counterfeit and had a general intent to defraud unknown third parties with those bills. *United States v. Pitts,* 508 F.2d 1237, 1240 (8th Cir. 1974), *cert. denied,* 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 445 (1975). In reviewing the sufficiency of the evidence on these elements, we bear in mind the general rule that "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Hamling v. United States,* 418 U.S. 124, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

Several items of evidence in the record provide a basis upon which the jury could have inferred that Berry knew the note was counterfeit and intended to use it to defraud third persons. First, Berry possessed three other counterfeit $20 bills, and passed two of them at different business establishments. *See United States v. Dodd,* 444 F.2d 1402, 1403 (8th Cir. 1971), *cert. denied,* 404 U.S. 1021, 92 S.Ct. 693, 30 L.Ed.2d 670 (1972) (eight bills passed at two different business establishments). In each instance, Berry used a rather large denomination, $20, to pay for small purchases of two to four dollars. *See Moore v. United States,* 375 F.2d 877, 879 (8th Cir.), *cert. denied,* 389 U.S. 844, 88 S.Ct. 92, 19 L.Ed.2d 110 (1967). Third, the bills were unusual in appearance and readily identifiable as counterfeit. *See United States v. Dodd, supra; Moore v. United States, supra.* Two service station attendants immediately noticed the unusual appearance of the bills and notified their managers, who called authorities. A cashier noticed that the margins on another bill were unusual, mentioned to Berry that the bill looked "funny," and took the bill to her supervisor. Finally, when interviewed by a Secret Service Agent on March 24, 1978, Berry said he had not been in the areas in which the bills were passed for two months. After a voluntary search of his

---

1. Section 472 provides in part:

    Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, . . . any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

wallet and discovery of a receipt dated March 18, 1978, for payment to a motel located in one of the cities, Berry changed his answer. He said he had been going to one of the areas where the bills were passed and changed his mind after spending a night in the motel. A jury could reasonably infer guilty knowledge and intent to defraud from the inconsistent statements. *See United States v. Pitts, supra,* 508 F.2d at 1240. The evidence summarized above was clearly sufficient for the jury to infer Berry had guilty knowledge and intent to defraud.

■ The counterfeit bills introduced in evidence were a somewhat purplish color, which was caused by the use of Ninhydrin in the process of examining them for fingerprints. Berry argues that the bills should not have been admitted because they were not in substantially the same condition as they were when the crime was committed. Since the bills appeared more similar to genuine currency earlier, Berry argues that the change in color affected the probative value of the bills on the main issue of guilty knowledge and intent to defraud. While the appearance of the bills may have affected their probative value on the issue of intent, we hold that the court did not err in their admission. The bills were relevant, despite their changed color, on the issues of whether they were counterfeit and whether they were the bills passed by Berry. The latter was shown by chain of evidence testimony and fingerprinting test results. Moreover, the jury could not have made the prejudicial inference that the bills remained unchanged in the testing process. The prosecutor apparently explained the reason for the purplish color in his opening argument, and the bills were admitted only after an explanation for their changed color was elicited from witnesses by the prosecutor. Witnesses who testified that they immediately recognized bills as counterfeit based their conclusions largely on the bills' unusual margins. No cautionary instruction to prevent a prejudicial inference being drawn by the jury was requested. Under these circumstances, the counterfeit bills were properly admitted into evidence. *See*

*United States v. Skelley,* 501 F.2d 447, 451 (7th Cir.), *cert. denied,* 419 U.S. 1051, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974).

The judgment is affirmed.