**Robert DIETZ, Appellee,**

v.

**Herman SOLEM, Warden, Appellant.**

**No. 81–1691.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1981.

Decided May 12, 1982.

Mark V. Meierhenry, Atty. Gen., Mikal Hanson, Asst. Atty. Gen., Pierre, S. D., for Herman Solem, appellant.

Keith R. Strange, Strange, Strange & Palmer, Sioux Falls, S. D., for Robert Dietz, appellee.

Before BRIGHT and ROSS, Circuit Judges, and LARSON,* District Judge.

ROSS, Circuit Judge.

This case involves an appeal from the district court's order granting Robert Dietz's petition for writ of habeas corpus. The writ was granted following a remand to the district court which this court had ordered in *Dietz v. Solem*, 640 F.2d 126 (8th Cir. 1981).

In *Dietz v. Solem, supra,* 640 F.2d at 129, this court held that a jury instruction on the element of intent which was given at Dietz's state trial for third degree burglary was contrary to the Supreme Court's decision in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). However, we also held that Dietz's failure to make an objection to the instruction at trial required that under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), Dietz show "cause and prejudice" before relief could be granted. This court then found that Dietz had satisfied the "prejudice" prong of the test, but remanded the case to the district court for a finding regarding the "cause" portion of the test. *Dietz v. Solem, supra,* 640 F.2d at 132–33.

This court believed that a remand was necessary because the "cause" issue had not been factually developed in the district court nor adequately briefed in our court. *Id.* at 132. Additionally, we noted that at that time there were differing views in other circuits as to what facts might satisfy the "cause" portion of the test. *Id.* at 132.

On June 11, 1981, following an evidentiary hearing, the district court granted the writ of habeas corpus and made the following findings regarding a showing of "cause":

> [P]etitioner has established adequate "cause" [for] failing to object to instruction number nine at his trial conducted in Turner County, South Dakota, in that petitioner's trial counsel was unaware of the decision of *Mullaney v. Wilbur*, 421 U.S. 684 [95 S.Ct. 1881, 44 L.Ed.2d 508] (1975); [and] petitioner's trial counsel's failure to object to said jury instruction number nine was not a trial tactic nor was it deliberate strategy to insure later constitutional claims; [and] petitioner's trial counsel was simply unaware that instruction number nine was possibly unconstitutional at the time of petitioner's trial.

After both the decision of the district court and oral argument of this case on appeal, the Supreme Court addressed the issue of showing "cause" under *Wainwright v. Sykes* in the recent decision of *Engle v. Isaac*, —— U.S. ——, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Application of the decision in *Engle v. Isaac* to the facts of this case requires us to reverse the order of the district court granting the writ of habeas corpus.

In *Engle v. Isaac*, the Supreme Court was called upon to review a state prisoner's claim that a traditional Ohio jury instruction given at his trial which required the defendant to carry the burden of proving self-defense by a preponderance of the evidence violated the due process clause. *Id.* at ——, 102 S.Ct. at 1562. While noting that this argument presented a "colorable constitutional claim," Justice O'Connor, speaking for the majority, found that there was not "cause" for having failed to object to the instruction at trial and thus under *Wainwright v. Sykes* consideration of the claim in a habeas corpus proceeding was

---

* The Honorable Earl R. Larson, Senior United States District Judge for the District of Minne-   sota, sitting by designation.

barred. In finding that "cause" for failing to object had not been established the Court reasoned as follows:

Respondents seek cause for their defaults in two circumstances. First, they urge that they could not have known at the time of their trials that the Due Process Clause addresses the burden of proving affirmative defenses. Second, they contend that any objection to Ohio's self-defense instruction would have been futile since Ohio had long required criminal defendants to bear the burden of proving this affirmative defense.

We note at the outset that the futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial. If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid. Allowing criminal defendants to deprive the state courts of this opportunity would contradict the principles supporting *Sykes.*

Respondents' claim, however, is not simply one of futility. They further allege that, at the time they were tried, they could not know that Ohio's self-defense instructions raised constitutional questions. A criminal defendant, they urge, may not waive constitutional objections unknown at the time of trial.

We need not decide whether the novelty of a constitutional claim ever establishes cause for a failure to object. We might hesitate to adopt a rule that would require trial counsel either to exercise extraordinary vision or to object to every aspect of the proceedings in the hope that some aspect might mask a latent constitutional claim. On the other hand, later discovery of a constitutional defect unknown at the time of trial does not invariably render the original trial fundamentally unfair. These concerns, however, need not detain us here since respondents'

claims were far from unknown at the time of their trials.

*In re Winship*, 397 U.S. 358 [90 S.Ct. 1068, 25 L.Ed.2d 368] (1970), decided four-and-one-half years before the first of respondents' trials, laid the basis for their constitutional claim. In *Winship* we held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.,* at 364 [90 S.Ct. at 1072]. During the five years following this decision, dozens of defendants relied upon this language to challenge the constitutionality of rules requiring them to bear a burden of proof. [Footnote citing numerous state and federal opinions omitted.] In most of these cases, the defendants' claims countered well-established principles of law. Nevertheless, numerous courts agreed that the Due Process Clause requires the prosecution to bear the burden of disproving certain affirmative defenses. In light of this activity, we cannot say that respondents lacked the tools to construct their constitutional claim.[42] [Footnote below.]

We do not suggest that every astute counsel would have relied upon *Winship* to assert the unconstitutionality of a rule saddling criminal defendants with the burden of proving an affirmative defense. Every trial presents a myriad of possible claims. Counsel might have overlooked or chosen to omit respondents' due process argument while pursuing other avenues of defense. We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim. Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labelling alleged unawareness of the objection as cause for a procedural default.

[42] Respondent Isaac even had the benefit of our opinion in *Mullaney v. Wilbur, supra,* decided three months before his trial. In *Mullaney* we invalidated a Maine practice requiring criminal defendants to negate malice by proving that they acted in the heat of passion. We thus explicitly acknowledged the link between *Winship* and constitutional limits on assignments of the burden of proof.

*Id.* —— U.S. at —— ——, 102 S.Ct. at 1572–74 (footnotes omitted except as indicated).

In this case, the district court found that defense counsel was unaware of the Supreme Court's decision in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), a decision which we noted in *Dietz v. Solem, supra,* 640 F.2d at 132, had been issued approximately five months *prior to* Dietz's trial. The question which must then be addressed following *Engle v. Isaac* is whether at the time of Dietz's trial, and in regard to the intent instruction given, there was then available the basis for a constitutional claim and whether other defense counsel had perceived and litigated that claim.

The decision of the Supreme Court in *Sandstrom v. Montana, supra,* supplies the answer to these questions. In *Sandstrom* the Court rested its opinion regarding an intent instruction similar to that given at Dietz's trial on the Court's prior decisions in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). In *Sandstrom v. Montana, supra,* 442 U.S. at 513, 99 S.Ct. at 2453, the Court noted that at the 1977 trial, defense counsel had supported his objection to the intent instruction with their decision in *Mullaney v. Wilbur.* More importantly, the Supreme Court noted in *Sandstrom* that "[b]oth federal and state courts have held, under a variety of rationales, that the giving of an instruction similar to that challenged here is fatal to the validity of a criminal conviction." *Id.* at 514, 99 S.Ct. at

2454. By footnote the Supreme Court then cited a number of pre-1975 cases which had so held. *Id.* at 514 n.3, 99 S.Ct. at 2454 n.3. It is also relevant that this court in *Moore v. United States,* 375 F.2d 877, 880 (8th Cir.), *cert. denied,* 389 U.S. 844, 88 S.Ct. 92, 19 L.Ed.2d 110 (1967) noted that the same type of intent instruction as that given at Dietz's trial had been criticized by our court and others. In *Moore v. United States,* we held that such an instruction would not amount to plain error where "the proof of guilt was strong." *Id.* at 881.[1] While this court did not find reversible error in *Moore v. United States,* it is clear that the giving of the instruction was not favored. In fact, this court did find reversible error in *United States v. Diggs,* 527 F.2d 509, 513–15 (8th Cir. 1975) where the instruction was given and the government's case was not strong.

Based on (1) the Supreme Court's reliance in *Sandstrom* on *Mullaney v. Wilbur,* an opinion issued prior to Dietz's trial; (2) the Supreme Court's citation in the *Sandstrom* opinion to pre-1975 cases in both state and federal courts which had struck down use of similar intent instructions; and (3) cases in this circuit which had criticized the use of such an instruction, we must hold that Dietz's counsel at the time of trial had available the constitutional basis for an objection and that other defense counsel had perceived and litigated that claim. Thus, following the Supreme Court's holding in *Engle v. Isaac,* Dietz has failed to establish "cause" for failing to object to the intent instruction at trial and habeas corpus relief is barred.

The order of the district court is reversed.

---

**1.** In *Dietz v. Solem,* 640 F.2d 126, 130 (1981) we noted that after *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) this court's decision in *Moore v. United States,* 375 F.2d 877, *cert. denied,* 389 U.S. 844, 88 S.Ct. 92, 19 L.Ed.2d 110 (1967) is no longer the

law. We should note, however, that the Supreme Court in *Sandstrom* remanded that case for consideration of whether the giving of the instruction constituted harmless error. *Sandstrom v. Montana, supra,* 442 U.S. at 526–27, 99 S.Ct. at 2460.